FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 1 3 2026

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CANADA BANCSHARES, INC.                                    PLAINTIFF

v.                         Case No. 4:26-cv-267-KGB

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM;
JEROME H. POWELL, in his Official
Capacity as Chair of the Board of Governors;
TRAVIS HILL, in his Official Capacity as Chair
of the Federal Deposit Insurance Corporation; and
SUSANNAH MARSHALL, in her Official Capacity
as Commissioner of the Arkansas State Bank Department    DEFENDANTS

---

## BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

---

Plaintiff, Canada Bancshares, Inc. ("CBI"), for its Brief in Support of its Motion for Preliminary Injunction against the Board of Governors of the Federal Reserve System (the "Board"); Jerome H. Powell, in his Official Capacity as Chair of the Board of Governors; Travis Hill, in his Official Capacity as Chair of the Federal Deposit Insurance Corporation (the "FDIC") (collectively, the Board, Mr. Powell, Mr. Hill, and the FDIC are the "Federal Regulators"); and Susannah Marshall, in her Official Capacity as Commissioner of the Arkansas State Bank Department (the "State Regulator" and, together with the Federal Regulators, the "Agencies"), states:

### INTRODUCTION

CBI recently became the sole holding company of the Bank of England (the "Bank") upon the dissolution of CBI's parent holding company, MHBC Investments Limited Partnership I, LLLP (the "Partnership"). As such, CBI is entitled to the accoutrements of Bank ownership, including, for example, setting the Bank's strategy and governance, managing the Bank's capital and funding, and

interacting directly with the Agencies. But the Agencies are preventing CBI from doing so. More specifically, the Agencies refuse to recognize *anyone's* status as the Bank's owner simply because there is a legal dispute pending among the Partnership's partners over the winding up of that business. Indeed, the FDIC and the State Regulator have asserted in writing that the Bank's ownership "**remains a private legal issue that [they] have no jurisdiction over.**" The Board has expressed the same opinion verbally during meetings over the Bank's ownership.

Without a preliminary injunction from this Court ordering the Agencies to immediately recognize CBI as the Bank's owner, the Bank will suffer governance paralysis, capital and liquidity crises, and severe operational disruption. Worse yet, the Agencies' continued refusal to recognize CBI as the Bank's owner interferes with CBI's due-process rights. To preserve the status quo, to ensure CBI's and the Bank's survival, and to protect the Bank's customers, this Court should enter a preliminary injunction ordering the Agencies to recognize CBI's status as the Bank's owner.

## BACKGROUND

CBI hereby incorporates the factual allegations contained in its Verified Complaint by reference pursuant to Federal Rule of Civil Procedure 10(c).

## ARGUMENT

A preliminary injunction is warranted when (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm absent preliminary relief; (3) the balance of the equities favors the movant; and (4) an injunction is in the public interest. *Missouri v. Biden*, 112 F.4th 531, 536 (8th Cir. 2024) (per curiam). Though no single factor is "dispositive," *Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023), likelihood of success is "the most significant" factor, *Missouri*, 112 F.4th at 536. When the federal government is the party opposing a preliminary injunction, the balance of the equities and the public interest "merge" into a single factor. *See, e.g., Missouri v. Trump*, 128 F.4th 979, 996–97 (8th Cir. 2025). Here, each factor supports a preliminary injunction.

2

I.  **CBI is likely to succeed on the merits because CBI is the Bank's sole holding company.**

As for this initial, most crucial factor, CBI is likely to succeed on the merits because, following the Partnership's dissolution, CBI became the Bank's sole holding company. More specifically, Mary Hanna Boles Canada has always been the Partnership's only legally recognized General Partner. Immediately upon the Lonoke County Circuit Court's appointing Gary Canada, Sr. as Mrs. Canada's emergency guardian on September 12, 2025, Mrs. Canada was dissociated from the Partnership by operation of law. Ark. Code Ann. § 4-47-603(7)(B) ("A person is dissociated from a limited partnership as a general partner upon . . . the appointment of a guardian or general conservator for the person.").

As such, the Partnership had 90 days— up and until December 12, 2025[1]— to either (i) admit a new General Partner, or (ii) consent to continue the activities of the limited partnership and admit a new General Partner in accordance with that consent. Ark. Code Ann. § 4-47-801(3)(B); **Ex. 1** to Compl., at §§ 6.9, 10.1(c). However, the Partnership failed to do either, and the Arkansas Secretary of State accordingly certified the Partnership's dissolution. **Ex. 5** to Compl. Upon the Partnership's dissolution, CBI became the Bank's sole holding company. As the Bank's sole holding company, CBI is entitled to, among other things: (i) the Agencies' recognition, (ii) the right to set the Bank's strategy and governance, and (iii) the ability to manage the Bank's capital and funding. Therefore, CBI is likely to succeed on the merits, and this most important factor weighs heavily in CBI's favor.

II.  **CBI, the Bank, and the Bank's customers have suffered and will suffer irreparable harm absent injunctive relief.**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024). For this requirement, a plaintiff need not prove with absolute certainty

---

[1] The Lonoke County Circuit Court later appointed Nicole Canada Luebke and Mr. Canada, Sr. as Mrs. Canada's co-guardians, but Mrs. Canada's guardianship has continued uninterrupted from September 12, 2025, to the date and time of this filing.

3

that injury will occur, but, instead, need merely show that irreparable harm is "likely" absent an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Here, the Agencies' refusal to recognize CBI as the Bank's owner has caused and will continue to cause CBI, the Bank, and the Bank's customers to suffer irreparable harm because such a refusal produces: (i) governance paralysis— the Bank's board cannot act effectively because the Agencies refuse to recognize appointments and management is unsure whose instructions to follow, thereby increasing the risk of mismanagement, (ii) capital and liquidity crises— if the Bank needs capital to meet regulatory capital ratios, it may fail to receive it both because (a) possible investors will shirk at investing money given the Agencies' position that no one presently owns the Bank, and (b) the Agencies would not act to either approve or disapprove such a capital injection (if it was a substantial one, for example), because they do not recognize anyone as yet having the authority to seek such approvals, (iii) operational disruption— vendors, other banks, and market participants could freeze activity due to uncertainty about authority and depositors will lose confidence if they perceive that the Bank is powerless, and (iv) ironically, regulatory noncompliance, as, without recognized ownership authority, compliance obligations like reporting to the Agencies, executing risk mitigation, and submitting stress test responses may fall through the cracks.

Indeed, the Agencies' unlawful refusal to recognize CBI as the Bank's owner is substantially likely to result in (i) CBI's and the Bank's terminations as ongoing business enterprises, and (ii) loss of customer goodwill, both of which constitute irreparable harm under Eighth Circuit precedent. *See, e.g.*, *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987) (explaining that "[i]rreparable harm has been found when one's allegedly unlawful actions . . . will cause another's ongoing business to terminate absent an injunction"); *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996) ("[T]he petitioners' potential loss of consumer goodwill qualifies as irreparable harm.").

Worse yet, as the Bank's sole holding company, CBI has a recognized property interest in its ownership of the Bank. *Cf. FDIC v. Mallen*, 486 U.S. 230, 240 (1988) ("[A]ppellee's interest in the right to continue to serve as president of the bank and to participate in the conduct of its affairs is a property right protected by the Fifth Amendment Due Process Clause."); *Kaufman v. Societe Internationale Pour Participations Industrielles Et Commerciales, S.A.*, 343 U.S. 156, 159–60 (1952) (holding that "the rights of innocent stockholders . . . must be fully protected"). The Agencies' unlawful refusal to recognize that interest or give it any meaningful legal effect without due process of law or adequate compensation threatens violations of CBI's constitutional rights, independently constituting irreparable harm warranting injunctive relief. *See, e.g., Little Rock Fam. Plan. Servs. v. Jegley*, 549 F. Supp. 3d 922, 935 (E.D. Ark. 2021) ("The deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, CBI has suffered and will continue to suffer irreparable harm absent immediate injunctive relief.

**III.    The balance of the equities and the public interest support a preliminary injunction both because (i) the Agencies are uninterested in who owns the Bank, they simply need Court direction, and (ii) customers' interests and the public's faith in the banking regulatory regime are in peril absent injunctive relief.**

The balance of the equities and public interest, which "merge" in suits against the government, also decisively favor preliminary relief. *Missouri*, 128 F.4th at 996–97. At the outset, the Agencies have no interest in this case warranting protection because they are uninterested in which entity ultimately owns the Bank. After all, their stated position is that the Bank's ownership "**remains a private legal issue that [they] have no jurisdiction over.**" Stated differently, the Agencies will treat whomever this Court determines to be the Bank's owner as such.

Moreover, "it is always in the public interest to protect constitutional rights" like CBI's due-process entitlements. *Phelps-Roper v. Nixon*, 59 F.3d 480, 485 (8th Cir. 2007). And, even better, entering a preliminary injunction in CBI's favor would mean that the Bank once again has stable management

and oversight— thereby protecting customers' interests and the public's faith in the regulatory regime underlying the banking system. Thus, this final factor weighs heavily in CBI's favor, too.

## CONCLUSION

Following the Partnership's dissolution, CBI became the Bank's sole holding company. As such, it is constitutionally entitled to the accoutrements of ownership, including but not limited to: (i) the Agencies' recognition of CBI as the Bank's owner, (ii) the right to set the Bank's strategy and governance (subject to the Agencies' regulatory oversight), and (iii) the ability to manage the Bank's capital and funding (also of course subject to the Agencies' regulatory oversight).

Because CBI is (i) likely to succeed on the merits, (ii) has suffered and will continue to suffer irreparable harm absent immediate injunctive relief, and (iii) the balance of the equities and the public interest favor such relief, this Court should enter a preliminary injunction ordering the Agencies to immediately recognize CBI's status as the Bank's owner. Doing so preserves the status quo, ensures CBI's and the Bank's survival, and protects the Bank's customers from peril. Accordingly, CBI respectfully requests that this Court grant its Motion for Preliminary Injunction and award CBI all other relief that this Court deems just and proper.

Respectfully submitted,

Rose Law Firm,
a Professional Association
120 East Fourth Street
Little Rock, Arkansas 72201
Telephone: (501) 375-9131

David S. Mitchell, Jr.
Arkansas Bar No. 2010271
dmitchell@roselawfirm.com

W. Silas Heffley
Arkansas Bar No. 2022179
sheffley@roselawfirm.com

Rose Law Firm,
a Professional Association

809 S. 52nd Street, Ste. A
Rogers, Arkansas 72758
Telephone: (479) 301-2444

Ryan J. Smith
Arkansas Bar No. 2018192
rsmith@roselawfirm.com

Tyler D. Mlakar
Arkansas Bar No. 2022150
tmlakar@roselawfirm.com

*Attorneys for Plaintiff Canada Bancshares, Inc.*